**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MARGO YATES-WILLIAMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-2554 |
| § | |
| IBRAHIM EL NIHUM, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

This is a health care liability claim based on Texas law, in federal court on the basis of diversity jurisdiction. The plaintiff, Margo Yates-Williams, suing on her own behalf and on behalf of her children, alleges that after Dr. Ibrahim El Nihum performed spinal surgery on her at the College Station Medical Center on July 25, 2008, she developed a severe infection within her spine. She alleges that despite an August 4, 2008 visit to the emergency room at the College Station Medical Center; visits on August 4 and August 7 to Dr. El Nihum; visits on August 6 and August 20 to a family physician, Dr. Lacrecia Foster, at the College Station Family Medical Center; and an August 25, 2008 visit to Dr. Jonathan Friedman at Texas Brain & Spine, a Methicillin Resistant Staph infection was not treated. The infection was ultimately identified and treated surgically on August 31, 2008. Yates-Williams alleges that the infection and the delay in treatment have left her with permanent pain and weakness. On August 10, 2009, she sued Dr. El Nihum and Dr. Friedman. On January 22, 2010, she amended her complaint to add Dr. Foster and the College Station Family Medical Center. In another amended complaint filed on March 12, 2010, Yates-Williams added the College Station Medical Center as a party.

Some of the defendants have challenged three of the plaintiff's expert reports on the basis that they do not meet the requirements of Chapter 74 of the Texas Civil Practice and Remedies Code. The College Station Medical Center filed a motion to dismiss and objections to the report of Dr. William R. Francis, an orthopedic surgeon. In this report, Dr. Francis opines that the infection was caused by contaminated surgical instruments and that the College Station Medical Center did not meet the applicable standard of care. (Docket Entry No. 36). Yates-Williams has responded to the motion. (Docket Entry Nos. 37, 38). The College Station Family Medicine Center and Dr. Lacrecia Foster filed objections to the report of Dr. Adam Weinstein, a family practice physician, opining that Dr. Foster acted below the applicable standard of care in failing to have Yates-Williams evaluated by a neurosurgeon or orthopedic spinal surgeon. (Docket Entry No. 39). These two defendants have also objected to the report of Dr. Edward Fishman, a family practice physician, also opining that Dr. Foster acted below the standard of care by failing to admit Yates-Williams to the hospital for care by specialists after the infection developed and by prescribing an improper course of treatment, both of which worsened her injuries. (Docket Entry No. 33). Yates-Williams has responded to these motions. (Docket Entry No. 41).[1]

Based on the motions and responses, the record, and the applicable law, this court overrules the objections to the reports and denies the motion to dismiss. The reasons are explained below.

---

[1] The College Station Medial Center has also moved for a protective order to shield a document from discovery under the Texas medical-committee and peer-review-committee privileges. (Docket Entry No. 50). Because Yates-Williams's response is not due until July 1, 2010, that motion is not yet ripe. Once the response is filed, this court will review the document and issue a ruling.

**I.     The Applicable Law**

Under Texas law, the plaintiff in a medical malpractice action must prove four elements: (1) a physician's duty to comply with a specific standard of care; (2) a breach of the standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App. – Houston [1st Dist.] 2006, pet. denied). The standard of care must be established by expert testimony unless the mode or form of treatment is a matter of common knowledge or is within lay experience. *Jackson v. Axelrad*, 221 S.W.3d 650, 655 (Tex. 2007).

Section 74.351 of the Texas Civil Practice and Remedies Code, as amended in 2005, requires a plaintiff who has initiated "a health care liability claim" to serve on each party or the party's attorney "not later than the 120th day after the date the original petition was filed . . . one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE § 74.351(a). The report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). Under Texas law, a court must dismiss a medical malpractice action if the expert report "does not represent a good faith effort to comply with the statute's requirements." *Simonson v. Keppard*, 225 S.W.3d 868, 871 (Tex. App. – Dallas 2007, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE § 74.351(l).

The threshold issue is whether § 74.351(a) applies to expert reports filed in a federal-court case based on Texas state-law causes of action. As a general rule, under the *Erie* doctrine, when a

3

plaintiff asserts a state-law claim in federal court, the federal court follows state substantive law and federal procedural law. *See Shady Grove Orthopedic Associates P.A. v. Allstate Ins. Co.*, --- U.S. ----, 130 S. Ct. 1431, 1460 (2010) (Ginsburg, J., dissenting); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003) ("Federal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings."). "Where the state rule reflects a substantive state policy not in conflict with the plain meaning of the federal rule, then the state rule is the rule of decision and should be applied under the terms of the *Erie* doctrine." *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). Federal courts are not bound to follow a state law that is in some sense "substantive" if it conflicts with the Federal Rules of Civil Procedure. *See Shady Grove*, --- U.S. ----, 130 S. Ct. at 1437-39; *Burlington N.R. Co. v. Woods*, 480 U.S. 1, 4, 5, 107 S. Ct. 967 (1987). If, when "fairly construed," a particular federal statute or rule is sufficiently broad to cause a "direct collision" with the relevant provision of state law, federal law preempts the operation of the state law. *Burlington*, 480 U.S. at 4-5, 107 S. Ct. 967; *see also Exxon*, 42 F.3d at 950 ("If the [federal] Rule speaks to the point in dispute and is valid, it is controlling, and no regard need be paid to contrary state provisions.").

Most of the federal district courts addressing the Texas expert-report requirements of § 74.351 have concluded they do not apply in federal cases. *See*, *e.g.*, *Mason v. United States,* 486 F. Supp.2d 621, 623-26 (W.D. Tex. 2007) ("[E]very federal district court in Texas to consider whether § 74.351 applies in federal proceedings has found that it does not."); *Poindexter v. Bonsukan*, 145 F.Supp.2d 800, 805 (E.D. Tex. 2001) (concluding that the Federal Rules of Civil Procedure apply to expert reports, not Texas rules, because there was a direct collision between the predecessor to Section 74.351 and Federal Rules 26 and 37); *Guzman v. Mem'l Hermann Hosp. Sys.,*

2008 U.S. Dist. LEXIS 101781, at *44 (S. D. Tex. Dec. 17, 2008); *Garza v. Scott & White Mem'l Hosp.,* 234 F.R.D. 617, 622 (W.D. Tex. 2005); *Brown v. Brooks County Det. Ctr.*, Civ. A. Nos. C-04-329, C-04-375, 2005 WL 1515466, at *2 (S.D. Tex. June 23, 2005); *Nelson v. Myrick*, Civ. A. No. G:04-0828, 2005 WL 723459, at *3 (N.D. Tex. Mar. 29, 2005); *McDaniel v. United States*, Civ. A. No. SA-04-CA-0314, 2004 WL 2616305, at *7 (W.D. Tex. Nov. 16, 2004); *but see Cruz v. Chang*, 400 F.Supp.2d 906, 911-13 (W.D. Tex. 2005) (the service of expert reports required by section 74.351 "is not displaced by federal rule and is . . . part of a comprehensive scheme governing plaintiff's substantive right"). The primary reason is that § 74.351 is inconsistent with Rule 26(a)(2) of the Federal Rules of Civil Procedure.

Rule 26(a)(2) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."[2]

---

[2] The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence Rule 702. *See Simpson v. James*, 903 F.2d 372, 378 n.20 (5th Cir. 1990); *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 292 (5th Cir. 1975); *see also Advocare Intern. L.P. v. Horizon Laboratories, Inc.*, Civ. A. No. 3:04-cv-1988-H, 2006 WL 176573, at *1 (N.D. Tex. Jan. 24, 2006) (decisions of Texas state courts are inapposite because "[t]he admissibility of expert testimony in a federal trial is governed by federal law"); 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE & PROCEDURE § 6263 ("Rule 702 governs the admissibility of expert witness testimony even in cases where state substantive law controls under *Erie*."). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Under Rule 702, the court must determine whether a proposed expert witness has training or experience sufficiently related to the issues and evidence before the court for the expert's testimony to assist the trier of fact. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004). The district court must make a "'preliminary assessment of whether that reasoning or methodology underlying

FED. R. CIV. P. 26(a)(2)(A). Rule 26(a)(2)(B) requires that "this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." The Rule sets out the requirements for the report's contents:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). The purpose is to provide "information regarding expert testimony sufficiently in advance of trial [so] that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." FED. R. CIV. P. 26 Committee Note (1993 Amendments). When a party fails to comply with the requirements of Rule 26, the court may exclude the witness or report as evidence at trial, at a hearing, or on a motion, and may "impose other appropriate sanctions." FED. R. CIV. P. 37(c)(1).

---

the testimony is scientifically valid and of whether the reasoning or methodology can be applied to the facts at issue.'" *Skidmore v. Precision Printing & Packaging*, *Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert*, 509 U.S. at 592-93, 113 S. Ct. 2786). The court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

In their motions, the defendants argue that the Fifth Circuit's opinion in *Chapman v. United States*, 353 F.App'x 911 (5th Cir. 2009), should lead this and other federal district courts to reconsider whether § 74.351 applies in federal diversity cases to set the requirements for expert reports.  In *Chapman,* a *pro se* federal prisoner sued the United States, alleging a denial of constitutionally adequate medical care and asserting a medical malpractice claim under state law. The district court granted the government's summary judgment motion.  The appellate court affirmed, giving two reasons.  The first was that the plaintiff could not raise a fact issue as to proximate causation.  The second was that the plaintiff did not file an expert report and could not show a departure from accepted standards of medical care.  *Id.* at *913-14.  Notably absent is discussion about whether § 74.351 applied.  It is clear that the reference to § 74.351 was not necessary to the holding, making it dicta.  Out of an abundance of caution, however, this court analyzes the reports under both § 74.351 and Rule 26.

**II.     Analysis**

      **A.     Dr. Francis's Report**

           **1.     Timely Filing**

The first challenge to the Francis report is that it was not timely filed under § 74.351.  The lawsuit was filed on August 10, 2009.  The College Station Medical Center was not added as a defendant until March 12, 2010. Dr. Francis's report was provided to the attorneys for the College Station Medical Center on January 25, 2010 by email and on March 5, 2010 by certified mail.  The College Station Medical Center urges that the report had to be served within 120 days from August 10, 2009, when the original petition was filed; Yates-Williams urges that when, as here, the report

is against a later named party, the report had to be served within 120 days from the filing date of the complaint that added the defendant to the lawsuit.

If Rule 26 applies, the report is clearly timely filed. Even if § 74.351 applies, the report is timely filed. When, as here, a physician or healthcare provider is not named in the original petition but is added to the suit in an amended petition, the 120-day period under § 74.351 for a report against the newly added party begins to run when the amended petition adding that party is filed. *See, e.g., Stroud v. Grubb*, --- S.W.3d ----, 2010 WL 1948282, at *3-4 (Tex. App. – Houston [1st Dist.] 2010, no pet h.); *Padre Behavioral Health Sys., LLC v. Chaney*, --- S.W.3d ----, 2010 WL 844596, at *6-7 (Tex. App. – Corpus Christi 2010, no pet. h.); *Osonma v. Smith*, No. 04-08-00841-CV, 2009 WL 1900404, at *1-3 (Tex. App. – San Antonio July 1, 2009, pet. denied) (mem. op.).

The defendants correctly cite a number of cases in which the 120-day period begins when the original petition is filed, but those cases involve reports implicating defendants who were named in that petition, even if new claims were later added against them. *See, e.g., Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47, 48 (Tex. App.–Dallas 2009, pet. denied). Yates-Williams served the College Station Medical Center's lawyers with the expert report and curriculum vitae of Dr. Francis within 120 days after filing the amended complaint adding College Station Medical Center as a defendant. The report was timely filed under both § 74.315 and Rule 26.

### 2. The Substance of the Report

The College Station Medical Center argues that Dr. Francis's report does not meet the requirements of § 74.351 because it is based on an unreliable foundation and because the opinions on breach of the standard of care and causation are "conclusory." Neither objection is valid.

8

Under § 74.351, an expert report must be an objective good-faith effort to comply with the definition of an expert report. *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A report must inform the defendant of the specific conduct called into question and provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879. When more than one defendant is sued, the expert report must state the standard of care that applies to each defendant, how the defendant failed to meet the standard, and the causal relationship between that defendant's failure and the claimed injury. *Id.* at 878; TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

The Francis report meets these requirements. It identifies the specific conduct that the plaintiff challenges and provides a basis for this court to conclude that the claims have merit. The report states the applicable standard of care, how the College Station Medical Center failed to meet it, and how that caused Yates-Williams's injuries and damages.

The report sets out the facts on which Dr. Francis relies in reaching his opinions and states that the facts are drawn from the medical records. The fact that the College Station Medical Center disputes some or all of these facts does not make the report improper under § 74.351 or Rule 26 of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence. *See* FED. R. EVID. 702 Committee Note (2000 Amendments) ("The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."); *Palacios*, 46 S.W.3d at 878-79; *Kelly v. Rendon*, 255 S.W.3d 655, 672 (Tex. App. – Houston [14th Dist.] 2008, ("In deciding whether the statutory standard has been met, the trial court examines only the four corners of the

expert's report and curriculum vitae"; "The expert report is not required to prove the defendant's liability.").

Nor is the report improperly conclusory in setting out the opinions on breach of the standard of care or on causation. The report sets forth Dr. Francis's qualifications, a statement of his opinions, the basis and reasons for those opinions (the standards of care and the reasons Dr. Francis believed those standards were breached), and the data considered in forming the opinions (including the medical records, depositions, and CT film and reports). The report states Dr. Francis's basis for concluding that the postoperative infection was caused by the introduction of Methicillin Resistant Staph. epi. bacteria into the disk space at L5-S1 by surgical instruments and/or solutions provided for that surgery by the College Station Medical Center that were contaminated with the bacteria. The statements are not improperly conclusory but rather provide an explanation for the opinions on how the bacteria was introduced into the infection site; how that caused an abscess to form within the disk space; and the additional injury that developed as a result of the delay in detection and treatment. Dr. Francis's report meets the requirements of § 74.351. *Cf. Palacios*, 46 S.W.3d at 878-79.

The record does not show that the defendants have been provided with a list of other cases in which Dr. Francis has testified as an expert, or his compensation in this case. This information is required by Rule 26. However, Yates-Williams may supplement Dr. Francis's report under Rule 26(e)(2) to include this information.

The motion to dismiss is denied and the objections to Dr. Francis's report are overruled.

### B.     Dr. Weinstein's and Dr. Fishman's Reports

#### 1.     Qualifications

The College Station Family Medicine Center and Dr. Lacrecia Foster object to the reports of Dr. Weinstein and Dr. Fishman on the ground that they are not qualified to express opinions in this case because they have no experience or training in neurosurgery, orthopedic surgery, or spinal surgery. But Dr. Weinstein and Dr. Fishman have the same degree and training as Dr. Foster and are also osteopathic family practitioners. The reports contain opinions on the accepted standard of care for a family practice physician such as Dr. Foster. The reports also contain opinions on the effect of Dr. Foster's delay in referring Yates-Williams to a neurosurgeon after Dr. Foster believed that there was an infection in the spine. Dr. Weinstein and Dr. Fishman are qualified to testify about the standard of care in osteopathic family medicine and about the effect of delay in surgically treating a spinal infection.

#### 2.     The Substance of the Reports

The defendants also challenge the reports on the basis that they do not adequately set out a causal link between Dr. Foster's alleged breach and the harm to Yates-Williams. The reports, however, do more than simply state a conclusory opinion as to causation. Dr. Weinstein and Dr. Fishman based their opinions on their review of the medical records and MRI film and reports and CT film and reports, and their training and experience. Dr. Weinstein's report states that, based on Dr. Foster's August 20 office records documenting "post-operative fever, post-operative MRI showing infection (radiologist) but Dr. El Nihum says no," Dr. Foster breached the applicable standard of care by failing to arrange for a neurosurgeon or orthopedic spinal surgeon to perform an evaluation within 24 hours. (Docket Entry No. 39, Ex. 1 , ¶ 13). Dr. Weinstein's report also

explains that the first sign of neurological damage was identified on August 25 and the surgery occurred August 31. The report opines that the delay between August 20 or 21 and August 31 allowed an abscess to grow and expand in the disk space and explains the basis for concluding that the growth and expansion caused pressure damage and toxicity, and injury, to the cauda equina. The report meets the requirements of § 74.351.

Dr. Fishman's report states that, based on the medical records, it was clear that Dr. Foster diagnosed Yates-Williams with an infection in the surgical wound around the spinal canal even earlier, on August 7. Dr. Fishman opines that Dr. Foster breached the standard of care by treating the infection with Bactrim and pain medications instead of making arrangements for Yates-Williams to be admitted to the hospital and treated by a neurosurgeon and/or orthopedic surgeon. The report states that the failure to have Yates-Williams placed in the proper care by August 10, 2008 allowed an abscess to grow and expand, causing pressure damage and toxicity, and injury, to the cauda equina. This report also meets the requirements of § 74.351.

Both Dr. Weinstein's and Dr. Fishman's expert opinions are admissible under Rule 702 of the Federal Rules of Evidence and both reports meet the requirements of Rule 26 of the Federal Rules of Civil Procedure, with one exception. The record does not show that the defendants have been provided with a list of other cases in which Dr. Weinstein or Dr. Fishman have testified as experts, or their compensation in this case. However, Yates-Williams may supplement the doctors' reports under Rule 26(e)(2) to include this information. The defendants' motions challenging Dr. Weinstein's and Dr. Fishman's reports are denied.

## III. Conclusion

The defendants' objections to the expert reports are overruled and their motion to dismiss is denied.

SIGNED on June 28, 2010, at Houston, Texas.

                                                    Lee H. Rosenthal
                                                    United States District Judge