IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARGO YATES-WILLIAMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-2554 |
| § | |
| IBRAHIM EL NIHUM, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

This is a health care liability claim based on Texas law, in federal court on the basis of diversity jurisdiction. The plaintiff, Margo Yates-Williams, suing on her own behalf and on behalf of her children, alleges that after Dr. Ibrahim El Nihum performed spinal surgery[1] on her at the College Station Medical Center ("the Hospital") on July 25, 2008, she developed a severe infection within her spine. She alleges that despite an August 4, 2008 visit to the emergency room at the Hospital; visits on August 4 and August 7 to Dr. El Nihum; visits on August 6 and August 20 to a family physician, Dr. Lacrecia Foster, at the College Station Family Medical Center; and an August 25, 2008 visit to Dr. Jonathan Friedman at Texas Brain & Spine, a Methicillin-resistant Staphylococcus epidermis ("MRSE") infection was not treated. The infection was ultimately identified and treated surgically on August 31, 2008. Yates-Williams alleges that the infection and the delay in treatment have left her with permanent pain and weakness. On August 10, 2009, she sued Dr. El Nihum and Dr. Friedman. On December 8, 2009 this court issued a scheduling order

---

[1] Dr. El Nihum performed a right L5-S1 hemilaminectomy, a disectomy, and a foraminotomy on Yates-Williams. (Docket Entry No. 27, at 4).

1

setting February 1, 2010 as the deadline for filing motions for leave to amend pleadings. (Docket Entry No. 15). Yates-Williams has amended her complaint twice since. On January 22, 2010, she amended her complaint to add Dr. Foster and the College Station Family Medical Center as defendants. In another amended complaint filed on March 12, 2010, Yates-Williams added the the Hospital as another defendant.

Yates-Williams has moved for leave to amend her complaint for a third time. (Docket Entry No. 58). She bases her request on what she asserts is newly discovered evidence indicating that the 2007 and 2008 surgical-site infection rate for laminectomies—one of the surgeries performed on Yates-Williams—in the Hospital's neurosurgical operating room exceeded national averages.[2] The Hospital opposes this motion. Yates-Williams's present complaint alleges that the Hospital breached its duty of care to Yates-Williams by failing to provide Dr. El Nihum with sterile surgical instruments and solutions. (Docket Entry No. 27, at 11–12). That complaint alleges that Yates-Williams was infected with MRSE. (*Id.* at 5). In the proposed amended complaint, Yates-Williams seeks to add allegations and claims that the Hospital breached the following duties: (1) to maintain reasonably safe premises; (2) to provide a reasonably safe operating room; (3) to inform Yates-Williams of the Hospital's surgical-site infection rate for laminectomies; (4) to inform the Hospital staff of the surgical-site infection rates; (5) to close the neurosurgical operating room; (6) to carry out the Hospital's Infection Control Plan; and (7) to take corrective measures to reduce the surgical-site infection rate. (Docket Entry No. 58, Exhibit B, 4–5). She also seeks to allege the possibility of a Methicillin-resistant Staphylococcus aureus ("MRSA") infection in addition the MRSE

---

[2] The Hospital responded, (Docket Entry No. 67); Yates-Williams replied and later supplemented, (Docket Entry Nos. 75, 79); and the Hospital surreplied. (Docket Entry Nos. 77, 78).

infection she previously alleged.

The Hospital argues that this court should deny Yates-Williams's motion for leave to amend because she has not demonstrated "good cause" under Rule 16 of the Federal Rules of Civil Procedure for extending the amendment deadline. The Hospital also argues that this motion is frivolous, futile, in bad faith, and would cause undue burden. (Docket Entry No. 67, at 14–20).

Based on a careful consideration of the motion, the responses and replies, and the applicable law, this court grants Yates-Williams's request for leave to amend in part and denies it in part. Yates-Williams may amend her complaint as proposed in Exhibit B to her motion for leave to amend, (Docket Entry No. 58), except that she may not allege that the Hospital breached its duty to maintain reasonably safe premises.[3]  (*Id.* at 4). The reasons are explained below.

## I.     The Legal Standard for a Motion for Leave to Amend

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party before a responsive pleading is served. After a responsive pleading is served, the party may amend only "with the opposing party's written consent or the court's leave." *Id.*  Although a court "should freely give leave when justice so requires," FED. R. CIV. P. 15(a), leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S. D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d

---

[3] The following motions are pending but not addressed in this motion: the Hospital's motion for a protective order for one document under the medical committee and peer review privileges (Docket Entry No. 50); The Hospital's motion for a broad protective order based on the medical committee and peer review privileges (Docket Entry No. 63); and the Hospital's motion to strike and exclude portions of Dr. El Nihum's testimony and opinions (Docket Entry No. 61). Yates-Williams has responded only to the Hospital's motion to strike and exclude portions of Dr. El Nihum's testimony and opinions. (Docket Entry No. 62). The Hospital has replied. (Docket Entry No. 78). In the July 14, 2010 discovery hearing, this court stated that it would defer ruling on the objections to the scope of discovery until Yates-Williams's motion for leave to amend was decided. (Docket Entry No. 60).

3

594, 598 (5th Cir. 1981)). A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, and futility of amendment." *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996).

Rule 16(b) states that scheduling orders "may be modified only for good cause and with the judge's consent." The Rule 16(b) "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend filed after the deadline set in the scheduling order. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546-47 (5th Cir. 2003); *S & W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535-36 (5th Cir. 2003); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); *Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149, 1154–55 (1st Cir. 1992); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990). Trial courts need "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quotations omitted). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419; *see also Johnson*, 975 F.2d at 610 ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, [and] disrupt the agreed-upon course of the litigation."); *Riofrio Anda*, 959 F.2d at 1155 (finding that permitting amendment under Rule 15(a) after scheduling order cutoff "would have nullified the purpose of Rule

4

16(b)(1)"). If amending the pleadings would, in effect, require amendment of the scheduling order, both Rule 15 and Rule 16 apply.

The "good cause" standard focuses on the diligence of the party asking the court to modify the scheduling order. *Parker*, 204 F.3d at 340; *In re Milk Prods.*, 195 F.3d at 437; *Johnson*, 975 F.2d at 609. The absence of prejudice to the nonmovant is relevant to Rule 15(a) but does not satisfy the "good cause" requirement of Rule 16(b). *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind.1995). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). In the context of a motion for leave to amend, the court may deny the motion if the movant "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quotations omitted); *see also Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying, under Rule 15(a)'s more lenient standard, a late-filed motion to amend a complaint to include claims based on same facts); *Sosa*, 133 F.3d at 1419 (denying leave to amend under rule 16(b) when facts were known to plaintiff at time of first complaint); *Parker*, 204 F.3d at 340–41 (same).

If a movant establishes good cause to extend the pretrial scheduling order, or if there is no need to extend the scheduling order, the court decides whether to grant leave to file the amended pleading under Rule 15(a). *See Johnson*, 975 F.2d at 608; *see also S & W Enters.*, 315 F.3d at 536 ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."). In

deciding whether to grant leave to file an amended pleading under Rule 15(a), a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

To determine "futility," the Fifth Circuit applies "'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (quoting *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968–69 (2007), the Court held that a complaint fails to comply with Rule 8 if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"

*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964–65); *see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965), *cert. denied*, *S. Scrap Material Co. v. United States*, 129 S. Ct. 1669 (2009). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1966).

In examining whether an amended complaint would be subject to dismissal for failure to state a claim, the court applying the Rule 12(b)(6) standard generally cannot look beyond the pleadings. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229, 120 S. Ct. 2659, 147 L. Ed. 2d 274 (2000); *see also Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 340 (5th Cir. 2008) (finding that because a 12(b)(6) "review is limited to his complaint and its proper attachments, we may not consider any additional evidence or pleadings."); *Fin. Acquisition Ptnrs. v. Blackwell,* 440 F.3d 278, 289 (5th Cir. 2006) (affirming the district court's refusal to review facts outside the complaint when reviewing a Rule 12(b)(6) motion); *Orthopro, Inc. v. Arthrex, Inc.,* 2009 WL 1374773, 2009 U.S. Dist. LEXIS 41697 (N.D. Tex. May 18, 2009) (stating that the "court will not consider [a letter attached to a Rule 12(b)(6) pleadings but not mentioned in the complaint] in ruling on the motion to dismiss."); *In re UICI Sec. Litig.,* 2006 U.S. Dist. LEXIS 73753 (N.D. Tex. Sept. 29, 2006) (in a Rule 12(b)(6) as a motion for failure to state a claim, refusing to consider "extrinsic evidence" submitted with the pleadings). If a court wishes to consider such extrinsic or additional materials, it must convert the motion to one under Rule 56 for summary judgment. *Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 852–53 (S.D. Tex. 2010). There is a

recognized exception for "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004).

**II. Analysis**

Yates-Williams has shown good cause under Rule 16 to amend her complaint. In discovery, Yates-Williams has learned information—including information about the Hospital's surgical-site infection rate—that was not available earlier. *See Pallotino*, 31 F.3d at 1027. The Hospital does not argue that Yates-Williams failed to exercised diligence in conducting discovery or in seeking leave to amend. Nor does the Hospital argue that Yates-Williams "knew or should have known" of its surgical-site infection rate. *See id.* To the contrary, the Hospital's opposition to Yates-Williams's request for leave points to her zeal during discovery. These new factual allegations support the conclusion that Yates-Williams has shown good cause for amending the complaint. Rule 16(b) is satisfied.

The Rule 15(a) factors also favor granting leave to amend. The record shows that the Yates-Williams did not unduly delay in seeking to amend. Her request for leave was filed on July 15, 2009, seven days after deposing the Hospital's infection-control coordinator about the reports. (Docket Entry No. 58, at 2). Based on the timeline and the continuing discovery disputes between the parties, Yates-Williams was not dilatory in moving for leave to amend.

The Hospital argues that Yates-Williams's motion is futile and in bad faith because the proposed amended complaint alleges that her infection may have been either MRSA or MRSE, while her present complaint alleges only MRSE. The Hospital has submitted affidavits from Dr. Daniel M. Musher, (Docket Entry No. 71), and lab technician Kimberly DuBose, (Docket Entry No.

70), stating that laboratory results demonstrate that Yates-Williams had MRSE, not MRSA. The affidavits state that the negative result in the coagulase test distinguishes the bacteria found in the tissue taken from Yates-Williams from MRSA. And according to Dr. Musher, MRSE is present on most people's skin and ordinarily causes no harm; infection results after surgery, it is typically because surgical instruments contact MRSE on the patient's skin and carry it beneath the skin. (Docket Entry No. 71, at 2–3). Dr. Musher concludes that any claim against the Hospital is "specious." (*Id.* at 2). The Hospital asks this court to examine evidence and documents outside of the pleadings in applying the standard used in a Rule 12(b)(6) motion. The affidavits and other documents attached to the Hospital's response are not properly considered in deciding whether the proposed amended complaint states a claim or instead would be futile. Instead, these materials are properly considered on a motion for summary judgment under Rule 56. Applying the standard, the proposed amended complaint is not futile or in bad faith based on the allegations as to the specific underlying infection Yates-Williams contracted.

The Hospital argues that this court should deny Yates-Williams's request for leave to amend because any claim based on the Hospital's duty to inform the patient of surgical-site infection rates is futile as a matter of law. Under Texas law, a hospital—as opposed to a physician—has no duty to obtain informed consent. *See, e.g.*, *Johnson v. Taylor*, No. 07-99-0439-CV, 2000 WL 1827897, at *1 (Tex. App.—Amarillo Dec. 13, 2000, pet. denied) ("Authority holds that a physician has the duty to inform the patients of the risks and benefits of a medical procedure. Yet no comparable duty rests with the hospital." (internal citations omitted)); *see also Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 686 (Tex. App.—Dallas 2000, no pet.); *Boney v. Mother Frances Hosp.*, 880 S.W.2d 140, 143 (Tex. App.—Tyler 1994, pet. denied). While a Hospital has no duty under Texas

law to inform a patient of the risks of a *specific* surgery, it may have a duty to inform the patient of the risk of *any* surgery in that hospital or in an identifiable part of that hospital. Yates-Williams has alleged that the Hospital's neurosurgery room had infection rates well beyond acceptable standards. *See Urban v. Spohn Hosp.*, 869 S.W.2d 450, 452–53 (Tex. App.—Corpus Christi 1993, pet. denied) ("A hospital may be held liable for its own negligence, which has been defined as 'the doing of that which an ordinary prudent hospital . . . in the exercise of ordinary care would not have done under the same or similar circumstances.'" (quoting *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366 (Tex. 1987)). Some Texas courts have recognized similar duties to those Yates-Williams alleges. *See Biggs v. Clyburn*, No. 01-02-00002-CV, 2003 WL 21197151 (Tex. App.—Houston [1st Dist.] May 22, 2003, pet. denied) (evaluating claim asserting that the hospital's breach of sterile techniques was a proximate cause of infection following total shoulder-replacement surgery but finding no evidence of breach); *Gill v. Watters*, No. 14-96-00205-CV, 1997 WL 399399, at *17 (Tex. App.—Houston July 17, 1997, pet. denied) (upholding the jury's finding that the doctor could rely on the hospital's duty to sterilize medical instruments); *Longoria v. McAllen Methodist Hosp.*, 771 S.W.2d 663, 663 (Tex. App.—Corpus Christi 1989, pet. denied) (finding a fact issue as to whether hospital breached its duties to inform patient of "risks inherent in blood transfusion and failing to keep appraised of the current status of medical knowledge regarding blood contamination."). *C.f. Talmore v. Baptist Hosps. Of Southeast Tex.*, No. 09-06-024-CV, 2006 WL 2883124, at *4–5 (Tex. App.—Beaumont Oct. 12, 2006, no pet.) (noting that whether a hospital is liable for a patient's bed sores is a "close question" but upholding the trial court's dismissal because the expert report was inadequate).

    The Hospital also argues that finding a duty to disclose surgical-site infection rates would

negate the Texas privilege for investigations by hospital committees. TEX. HEALTH & SAFETY CODE §§ 161.031–.032; *see also In re Univ. Of Tex. Health Ctr. at Tyler*, 33 S.W.3d 822, 825 (Tex. 2000). But alleging a general duty to inform a patient of an increased risk of surgery in all or part of a hospital is not necessarily inconsistent with enforcing this privilege. The Hospital may still assert the privilege in discovery.

The Hospital also argues that Yates-Williams should not be granted leave to amend to add a premises liability claim because "[p]laintiffs cannot use artful pleading to avoid the [Medical Liability and Insurance Improvement Act's] requirements when the essence of the suit is a health care liability claim." *Garland Comm. Hosp. v. Rose*, 156 S.W.3d 541, 543–44 (Tex. 2004) (citing *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex. 1998); *see also N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008) ("[T]he Texas Supreme Court (and numerous intermediate appellate courts) [have] made clear that a plaintiff's legal theories and labels do not control the question of whether a claim is a health care liability claim subject to (then existing) Article 4590i, known as the [MLIIA]."). However, Texas courts have so held only in cases in which a plaintiff attempted an end-run around an MLIIA requirement—usually the expert-report requirement—by pleading a premises liability claim. *See, e.g.*, *Garland*, 156 S.W.3d at 543–44 (finding that a negligent credentialing claim is an MLIAA claim requiring an expert report); *Holleman v. Vadas*, No. 04-05-00875-CV, 2007 WL 1059035, at *3 (Tex. App.—San Antonio Apr. 11, 2007, pet. denied) (finding that intentional misrepresentation about treatment is an MLIIA claim requiring an expert report); *Vanderweff v. Beathard*, 239 S.W.3d 406, 407 (Tex. App.—Dallas 2007, no pet.) (finding that a sexual assault claim is an MLIIA claim requiring an expert report); *see also N. Am. Specialty Ins.*, 541 F.3d at 561 ("Questions about what claims constitute health care liability

11

claims often have arisen in Texas because health care liability claims are subject to strict pleading and proof requirements under Texas law.").

Yates-Williams's proposed premises liability claim is a health care liability claim under Texas law. *See Marks v. St. Luke's Episcopal Hosp.*, 2010 WL 3373407, at *2 (Tex. Aug. 27, 2010) (finding that claim based on failure "to provide [] a safe environment in which to receive treatment . . . asserts a departure from the accepted standard of health care and is therefore a health care liability claim under the MLIIA"). The Texas legislature has narrowed the definition of "'health care liability claim' so that safety claims must be directly related to health care." *Harris Methodist Ft. Worth v. Ollie*, 270 S.W.3d 720, 723 (Tex. App.—Ft. Worth 2008, pet. filed); *Yamada v. Friend*, No. 02-07-00177-CV, 2008 WL 553690, at *3 (Tex. App.—Ft. Worth Feb. 28, 2008, pet. filed) (mem.op.); *Omaha Healthcare Ctr., LLC v. Johnson*, 246 S.W.3d 278, 284 (Tex. App.—Texarkana 2008, pet. filed); *Christus Health v. Beal*, 240 S.W.3d 282, 289 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Yates-Williams's allegation that the Hospital's negligence caused an MRSE infection to result from her surgery is a claim directly related to her health care. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(13) (defining "health care liability claim" as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract"); *Marks*, 2010 WL 3373407, at *5 ("[A]n accepted standard of safety is implicated under the MLIIA when the unsafe condition or thing, causing injury to the patient, is an inseparable or integral part of the patient's care or treatment."). Because Yates-Williams's premises liability claim is in substance a

health care liability claim, it is futile to raise it as a separate ground for relief. Yates-Williams may not amend her pleadings to assert this claim.

Finally, the Hospital argues that granting leave to amend would cause undue prejudice because it will broaden discovery and confuse the issues. However, given that there is a close relationship between the claims Yates-Williams seeks leave to assert and the claims she has already asserted, the risk of unduly burdensome additional discovery is reduced. The Hospital has already filed motions relating to discovery for these claims, including seeking a protective order for a document created by the Hospital's Infection Control Committee, (Docket Entry No. 50), and moving for discovery protection based on the medical committee and peer review privileges. (Docket Entry No. 63). There is no undue prejudice that would preclude amendment.

**III.   Conclusion**

The plaintiffs' motion for leave to file a third amended complaint is denied as to the proposed premises liability and otherwise granted. This ruling is without prejudice to the defendants' ability to raise the same arguments and supporting materials used to argue futility in later summary judgment motions filed after appropriate discovery has been conducted. A hearing will be held before the deposition of Brandi Knight.

SIGNED on September 3, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge